HARDY, Judge.
This is a suit against defendants as members of a commercial partnership for recovery of the sum of $1,324, representing the balance due on account for goods sold by plaintiff. Defendants, after admitting the indebtedness claimed by plaintiff, asserted a reconventional demand in the principal sum of $3,526, against which claim the amount due plaintiff should be allowed as a-credit. From a judgment in favor of plaintiff in the full amount of the sum claimed, and further judgment on defendants’ reconventional demand in the sum of $451, plaintiff has appealed. Defendants have not answered the appeal, and it follows that the only issue which is here presented concerns the correctness, vel non, of *335 the allowance of $451 on defendants’ ré-conventional demand.
The facts may he briefly summarized. Plaintiff is a wholesale dealer and the defendant partnership is a retail dealer in the sale of 'seed. Under dates of Septembef 17th and September 21, 1953 plaintiff, sold defendants specified quantities of seed, -invoicing the price thereof, for the two. transactions, at $3,562.50 and $3,199, respectively. Defendants made prompt payment against the invoice of September 17th in the sum of $3,562.50, and on September 22, 1953, defendants issued their check in favor of plaintiff, in the amount of $3,199, in payment of the invoice of September 21st. Included in the quantities of seed sold by plaintiff were items representing 10,000 pounds of Kentucky 31 Fescue seed, billed on the September 17th invoice, and 5,000 pounds of Kentucky 31 Fescue seed billed ■on the invoice of September 21st. The price charged for the Fescue seed was $12.50 per hundred, and the aggregate amounts set forth on the two invoices were $1,250 and $625 respectively. ' Subsequent to its issuance defendants stopped payment •on the check of September 22nd in the sum of $3,199 for the reason that the 15,-000 pounds of Fescue seed purchased from plaintiff had been discovered to be unsaleable due to the presence of wild onion seed, a noxious weed, in quantities above the limit of tolerance allowed in the State of Louisiana. After some considerable negotiations plaintiff allowed defendants credit against the balance of their account for the 15,000 pounds of Fescue seed at the sale price of $12.50 per hundred, amounting to a total sum of $1,875. The credit in this allowance against the balance of $3,199 leaves the amount of’ $1,324 which plaintiff claims in this suit.
Defendants’ reconventional demands are made up of claims for loss of profits totaling $900 on the sale of 15,000 pounds of Fescue seed at $6 per hundred; expenses in the sum of $50 for picking up and returning unsaleable seed from customers; extra •expenses representing additional cost to defendants of $2.20 per hundred on 8,000 pounds of certified Fescue seed, obtained dor the replacement of an equivalent amount of'the tainted-seed sold and delivered to a customer, and, finally, the sum of $2,400 cláimed to be loss ’of profits at $6 per hundred on 40,000 pounds of Fescue seed represented by orders withheld during investigation. On the above items the opinion of the District Judge itemized his allowances as representing $6 per hundred o.n 3,750 pounds of Fescue seed which had been planted by defendants’ customers and could not be recovered; $50 for the item of expense in picking úp and returning unsaleable'- seed;’ and $176 for the -increased cost of supplying the-certified seed.
We think it unnecessary to narrate the somewhat detailed facts surrounding the negotiations between plaintiff and defendants relating both to the original purchase and to the attempted settlement of the differences resulting from the discovery of noxious seed. It suffices to say that plaintiff originally purchased quantities of .Fes-cue seed from a dealer in the State of Kentucky and was furnished analyses made by the Department of Entomology and Botany of the University of Kentucky. In accordance with what appears to be accepted custom,. the sacks of seed were identified by lot numbers, permitting reconciliation with- the laboratory reports, the results of which were evidenced by tags attached to the sacks. Plaintiff did not re-analyze the seed despite the fact that this appears, from evidence in the record, to be customary procedure. However, we do not find that this omission on the part of plaintiff has any real bearing upon his liability for. reasons which we shall attempt to, hereinafter set forth.
Examination of defendants’ answer, which incorporates 'the basis for the recon-ventional demand, convinces' us that defendants originally predicated their claim upon an alleged breach of warranty on the part 'of plaintiff. :The pleading to which reference is made repeatedly avers the representations, ' warranties !' and guaranties made by plaintiff prior to purchase of the Fescue seed by "defendants. ■ We conclude, *336 as did the District Judge, that plaintiff did warrant the seed as being noxious-free, but we are further convinced, again in complete . accord with the findings of the District Judge, that plaintiff had no actual knowledge of the noxious weed content and that he was free of any actual bad faith.
We think it important to determine the legal basis upon which defendants rest their .claim for recovery, inasmuch as plaintiff resists such claims on the ground of an express and specific restriction of warranty on the part of plaintiff.'
If, as we believe, defendants’ claims rest upon an alleged breach of warranty, it would appear that the solution of this matter is comparatively simple.
Article 2531 of the LSA-Civil Code reads as follows: '
“Good’ faith seller — Right and Liabilities. — The seller who knew not the' vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those' incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.”
Article 2545, relating to the obligation of a seller who has acted in bad faith, provides :
“Restitution and damages — Liability for. — The seller, who knows the vice of the thing he sells and- omits to de- ■ clare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages.”
Being convinced, as we have above noted, that plaintiff was not in bad faith and did not know, of the vices existing in the shipments of seed, it seems clear that ■ plaintiff’s liability would be limited to the restoration of the price/ under the. provisions of Article 2531. This restoration having alrteady, been accomplished by credit allowed to defendants would exonerate plaintiff from any further response by way of damages.
While we think the article above is controlling and serves to dispose of this matter, we are further impressed by the explicit contractual restriction of warranty which is evidenced by the record.
The very invoices which are the basis for plaintiff’s suit, and which were duly received by defendants, contain the following limitation of warranty:
“McCauley Seed — Warrants that the seeds it sells are, at the time of delivery, as described on the container, within recognized tolerances; but it limits its liability on seed warranty to the amount of the purchase price of such seeds, and gives no other or further warranty, express or implied.”
 There being nothing against public policy in a limitation of the above nature, and since there is no evidence of bad faith on the part of plaintiff, we think defendants’ demands should have been refused. Examination of the Federal Seed Act found in 7. U.S.C.A. §§ 1551-1610 and the Louisiana Statute on the same subject, LSA-R.S. 3:1431 — 3:1447, not only fails to disclose any prohibition against a limitation of warranty such as that above shown, but indicates an implied recognition of such limitations.
A very recent case, decided by our brethren of the Orleans Court, involved a remarkably analogous matter both as to facts and law, Gilbert v. Reuter Seed Co., La.App., 80 So.2d 567. In the cited case the court gave full recognition and enforcement to then’use of a non-warranty clause by the seller of-seed, and we not only accord with the finding of the court in the cited case, but accept such finding as additional support for our position in the instant case.
For the reasons assigned the judgment appealed from is amended by rejecting defendants’ reconventional demands in their entirety, and, as amended, the judgment is affirmed. All costs of both courts are taxed against defendants.